27  841
36  889
27  841
50  873

### ALDEN B. ATKINS v. HELEN C. GLADWISH.

[FILED NOVEMBER 13, 1889.]

1. **Pleading.** The issue in a cause having been made up, a trial had with a verdict and judgment for the plaintiff, a writ of error trial and reversal in the supreme court, and mandate to the district court, on the second day of the next term of said court the defendant applied to the court for leave to withdraw his answer for the purpose of moving an order requiring the plaintiff to make her petition more definite and certain, which leave was refused, except upon the condition that the defendant would agree to be ready for trial on the following morning: *Held*, That such condition was within the discretion of the court.

2. ———: INDECENT ASSAULT. The words in the petition in an action for damages for an indecent assault, " Did then and there assault the plaintiff with foul and indecent purpose to do violence to her person and by force and intimidation to criminally know her, the said plaintiff," etc., after verdict, *held* sufficient.

3. **Witnesses:** CREDIBILITY: INSTRUCTIONS. An instruction in the following language, " If the jury believe that any witness in this case has knowingly sworn falsely to any material matter in this case, then you are instructed that this would justify you in disregarding the testimony of such witness entirely," approved.

4. **Evidence:** INSTRUCTIONS. Where, upon a trial, one witness testifies to a certain fact material to the issue, it is not error for the court to instruct the jury as to the law arising upon such fact, although such fact may be denied by other witnesses.

ERROR to the district court for Johnson county. Tried below before APPELGET, J.

*J. Hall Hitchcock*, and *E. W. Thomas*, for plaintiff in error:

The petition was fatally defective in alleging an assault merely and not traversible facts. (1 Hilliard on Torts [3d Ed.], 179; *Stivers v. Baker*, 9 S. W. Rep. [Ky.], 491; *B. & M. R. Co. v. Kearney County*, 17 Neb., 515; *Thomson v. Stetson*, 15 Id., 112; *O'Donohue v. Hendrix*, 13 Id., 257; *Farrar v. Triplett*, 7 Id., 240; *Bell v. Sherer*, 12 Id., 409.)   As to the ninth instruction: *Buffalo County v. Van Sickle*, 16 Neb., 363; *Blanchard v. Pratt*, 37 Ill., 246; *Yundt v. Hartrunft*, 41 Ill., 10; *Goeing v. Outhouse*, 95 Ill., 347; *Crabtree v. Hagenbaugh*, 25 Ill., 240; *McCraney v. Crandall*, 1 Ia., 117; Wharton, Ev., secs. 412, 1080; 86 Am. Dec., 331, N.; *Pease v. Smith*, 61 N. Y., 483; *Nelson v. Voree*, 55 Ind., 458; *Mack v. State*, 48 Wis., 286; *Sta'e v. McCartney*, 17 Minn., 64; *Schuck v. Hagar*, 24 Minn., 39.)   The eighth instruction must have misled the jury. (Sacketts, Instructions, p. 19; 2 Thompson on Trials, sec. 2295; *Bradley v. Coolbaugh*, 91 Ill., 148; *Smathers v. State*, 46 Ind., 447; *Paine v. Kohl*, 14 Neb., 581.)   The testmony as to the feud in the district should have been admitted. (*Jacobs v. Shorey*, 48 N. H., 100; *Drew v. Wood*, 6 Fost. [N. H.], 363.   As to misconduct of plaintiff's attorney: *Bolar v. Williams*, 14 Neb., 388; *Cropsey v. Averill*, 8 Neb., 160; *Fitzgerald v. Fitzgerald*, 16 Neb., 415; *Carr v. State*, 23 Neb., 761; *Smith v. People*, 8 Colo., 457.

*Lamb, Ricketts & Wilson*, and *A. E. Howard*, for defendant in error:

By pleading to the petition, the right to have it made more definite and certain was waived. (*Fritz v. Grosnicklaus*, 20 Neb., 413; *Bell v. Sherer*, 12 Id., 409.)   The ob-

jection should have been in the form of a demurrer. (*Stivers v. Baker*, 9 S. W. Rep. [Ky.], 491 ; *Roberts v. Taylor*, 19 Neb., 188.)   As to the ninth instruction: *Dell v. Oppenheimer*, 9 Neb., 457 ; *Gandy v. Pool*, 14 Id., 101; *State v. Shelledy*, 8 Ia., 489 ; *Minick v. People*, 8 Colo , 452 ; *Liddy v. R. Co.*, 40 Mo., 511 ; *State v. Thomas*, 78 Id., 327 ; *State v. Gee,* 85 Id., 647 ; *James v. Mickey*, 2 S. E. Rep , 130 ; Thompson on Trials, secs. 2423–5 ; *Post v. Garrow*, 18 Neb., 688 ; *R. V. R. Co. v. Fink*, 18 Id., 93; *B. & M. R. Co. v. Schluntz*, 14 Id., 425; *S. C. R. Co. v. Brown*, 13 Id., 317; *People v. Righetti*, 66 Cal., 185.   As to the eighth instruction: *Matthewson v. Burr*, 6 Neb., 320 ; *Parrish v. State*, 14 Neb., 67; *R. Co. v. Finlayson*, 16 Id., 584 ; *Gray v. Farmer*, 19 Id., 71.   The alleged misconduct of counsel was not sanctioned by any act of the trial court and cannot be complained of here. (*Bradshaw v. State*, 17 Neb., 147; *McLain v. State*, 18 Id., 154; 1 Thompson on Trials, sec. 962, and cases cited.)   The damages are not excessive. (*Cf. Craker v. R. Co.*, 36 Wis., 679.)   Two juries have passed on the evidence and the litigation should not be prolonged. (*Dunbar v. Briggs*, 18 Neb., 94.)

CoBB, J.

The plaintiff sued the defendant in the court below on the complaint that on November 9, 1886, while she was alone in her school room where she was teaching, at the village of Smartville, in Johnson county—her school room was situate so remote from any house that alarm could not be given—and while so pursuing her duties the defendant, without her knowledge, came to her school room and did then and there assault her with foul and indecent purpose to do violence to her person, and by force and intimidation to criminally know her; that she was greatly alarmed and by reason thereof she suffered and still suffers great men-

tal anguish, humiliation, and bodily pain, to her damage in the sum of $10,000; with prayer for judgment.

The defendant's answer was a general denial.

At a second trial in the court below, on May 16, 1889, the first having been reversed in this court on error (25 Neb., 390), the defendant moved to withdraw his answer, with a rule on the plaintiff to make her petition more definite and certain, which was denied by the court unless the defendant agreed to go to trial the following morning, to which the defendant excepted on the record.

There was a trial to a jury with verdict for the plaintiff of $500, to which the defendant excepted, with motion for a new trial, which, upon argument, was overruled and judgment was entered upon the verdict.

The defendant brings the cause again to this court on the following errors:

I. In refusing to compel plaintiff to make her petition specific and definite by stating the facts constituting the assault.

II. In admitting any testimony under the petition and in overruling the demurrer.

III. The petition was too vague and indefinite to set out a cause of action.

IV. In overruling the motion for nonsuit filed immediately after plaintiff's evidence was introduced.

V. In giving to the jury instructions asked by plaintiff, paragraphs 1, 2, 3, 4, 5, 6, 8, and 9.

VI. And instructing the jury that "the intent with which the alleged assault was committed was important as showing the aggravated character of the injury."

VII. And in instructing the jury that "if they believed that any witness had knowingly sworn falsely to any material matter, that alone would justify the jury in entirely disregarding the testimony of such witness."

VIII. In refusing to give instructions asked by defendant in paragraphs 1 and 2.

IX. In giving instructions by the court, 1, 4, and 5.

X. For errors of law excepted to on the trial.

XI. For excessive verdict, not supported by evidence, and given under the influence of passion and prejudice.

XII. In sustaining the objections of plaintiff's attorney to questions asked of defendant by his attorney as to alleged facts testified by plaintiff, and as to truth or falsity of her allegations, and asking him to tell the truth touching such charge.

XIII. In refusing to allow defendant to prove that there was quarreling and dissension in the school district, and that the parents of witnesses who testified for the plaintiff entertained feelings of hostility against the defendant which influenced the witnesses.

XIV. In not sustaining the objection to the evidence offered by the plaintiff on rebuttal, and permitting evidence then to be given that should have been given, if at all, on the examination in chief, and tending to contradict evidence drawn from defendant's witnesses by cross-examination by plaintiff's attorney.

XV. On account of the misconduct of plaintiff's attorney in stating to the jury in his closing address that the case had once been tried and a jury had found him guilty of the charge.

XVI. In overruling the motion for a new trial.

The first error assigned is that the court erred in refusing the application of the defendant for leave to withdraw his answer and present a motion for an order requiring the plaintiff to make her petition more definite and certain. Except upon the condition that the defendant would agree to be ready for trial on the following morning, the application was denied.

This application was made on the 16th day of May, 1889. It appears that issue was joined in the case on the 28th day of April, 1887. Then followed a trial and judgment in the district court, a writ of error trial and

judgment of reversal in the supreme court, and a mandate to the district court. The term of the said court began on the 15th day of May; the said application of the defendant was made on the second day of the term, and upon the fifth regular term of the court after the joining of the issue in the case.

It cannot be denied as a rule of pleading that by answering to the merits of a petition a defendant thereby waives all objections to its form, nor can the equally well established rule be questioned that a pleading once filed can only be withdrawn upon leave of the court. Such leave cannot be claimed as a matter of right, by any suitor, but will be granted *ex gratia*, or denied, in the discretion of the court. It is true that the discretion here spoken of is a judicial and not an arbitrary one. Its use will not be controlled, but its abuse will be corrected by an appellate court. There had been a trial of the case at bar on the merits, the plaintiff had given her evidence in which she had detailed the facts and circumstances of the alleged assault, her evidence had gone into a bill of exceptions, and had been of record in both courts for a year. The pleadings which it was sought to unsettle had been of record for two years. Under these circumstances the court was asked to extend this favor. Had it granted it unconditionally, it would have been a doubtful, if not a dangerous, exercise of discretion, but to grant it on condition that the plaintiff would not thereby lose a term of court, was certainly within a reasonable and proper discretion.

The second assignment is that the court erred in admitting any evidence under the petition. This point is partly discussed in the brief under the first assignment as well as under the second. The points of law stated in *maximic* form by plaintiff in error in the brief will not be questioned, amongst others that "if a petition fail to state a cause of action it will not support a judgment," and "if the facts stated in the petition do not constitute a cause of

action, filing an answer by the defendant is not a waiver of such defect." But while I am of the opinion that the petition now under consideration was originally subject to a motion to make it more definite and certain, and probably to one to strike certain words from it, as irrelevant matter, yet that all of its defects are of that character which is cured or waived by being answered; or, as was formerly expressed, "by pleading over." The words of the petition, "did then and there assault the said plaintiff," are, as I conceive, the statement of a fact and not a mere conclusion; but it is so indefinite a statement that, upon proper and seasonable motion, the pleader would be required to state the charge with greater definiteness and certainty, but it would still be the same fact. In many cases the dividing line between the statement of a fact and a conclusion is so obscure as to be difficult to define, and in such cases, in this practical age, and under our liberal system of pleading, a court will generally adopt the construction, which the parties themselves by their acts appear to have placed upon such language in a pleading.

In justice to counsel, I will say that they were not in the case when defendant's answer was made.

The seventh assignment of error is, that the court erred in giving the following instruction: (No. 9.) "If the jury believe that any witness in this case has knowingly sworn falsely to any material matter in this case, then you are instructed that this would justify you in disregarding the testimony of such witness entirely."

The maxim, "*Falsus in uno, falsus in omnibus,*" is one of general acceptation; but there is quite a diversity of opinion in the reported cases as to how it should be expressed in an instruction to a jury. It is not my purpose to compare the instruction above quoted with those which have been approved or disapproved in the courts of other states, but to say that I do not find either the weight of authority or the reason of the case to indispensably require such

charge to be qualified by the addition of the words "unless corroborated." Indeed, if the witness may not be believed unless corroborated, but may not be disbelieved if corroborated, even then credence is given alone to the corroborating testimony, and not to that of the implicated witness.

The giving of the eighth instruction requested by the plaintiff is also assigned for error, on the ground that by giving it the court assumed that it was proven that the defendant pointed a revolver at the plaintiff. The following is the instruction: (8.) "You are instructed that wantonly and recklessly pointing a revolver at another, when but a few feet away, under such circumstances as would naturally lead such other to believe it to be loaded, would be an assault, whether such revolver was in fact loaded or not, if you find from the evidence that the act of the person holding such revolver was such as to cause a reasonable person to believe that he intended to do harm with it." While it might probably be admitted that the weight of the evidence was against the testimony of the plaintiff that defendant did point a revolver at her, yet the fact remained that the plaintiff on the stand testified positively that he did. That, as I conceive, was sufficient to warrant the court in charging the jury as to the legal character of such act. Were this not so, the charge would in most cases be confined to a narrow compass.

It is also assigned for error that the court refused to allow the defendant to prove that there was quarreling and dissension in the school district, and that the parents of three or four witnesses of tender age who have testified against defendant, as well as the said witnesses themselves, were influenced by feelings of hostility against him, and that such feelings influenced the testimony of such witnesses.

It appears from the bill of exceptions that upon the trial Miss Julia Pitman was called and sworn as a witness on

the part of the plaintiff.   She testified that she was eighteen years of age; that she was attending school near Smartville, where Miss Gladwish taught in November, 1886; that she remembered the circumstance of Mr. Atkins and Mr. Dillon coming to the school house one morning, along about the first of December of that year; that Mr. Murphy and Mr. Creaney came in soon after Miss Gladwish had come.   She was asked to state what conversation she heard there between Miss Gladwish and Mr. Atkins touching what occurred on the 9th of November previous, and answered as follows: "Well, the first thing I heard Miss Gladwish ask Mr. Atkins why he came there.   He said in the first place he came to see how much coal there was in the coal house.   Then she asked him why he didn't go to the coal house.   He said he wanted to see how things looked inside the school house.   I don't remember just how the conversation run, I remember the principal part of it.   She asked him what he wanted to act the way he did for, and draw his revolver.   He said he did it in boyish play.   Then she told him, further on in the conversation, he had no right there, because she was trying to avoid him.   He said yes, he knew it, and he came to see what she was doing it for.   She told him she knew he would not have come unless he knew there was no one at Murphy's.   He said how should he know.   She said: 'You saw Mrs. Murphy at Richardson's.'   He said at first he didn't; then she said he did, because Mrs. Murphy told her so.   He said then that he saw her there.   He said that he had a right to carry a revolver; that he was an officer of the law, and he said, I believe, that he was under heavy bonds — forty or forty-five thousand dollars bonds — and he had a right to carry a revolver, etc."   On her cross-examination she testified, among other things, as follows:

Q.  Have your people been on bad terms with Atkins?

A.  They certainly have not been on very good terms with him.

Q. There has been a good deal of dissension and quarreling in the school district, has there not?

A. Why, yes, quarreling I suppose among the children, the same as other places.

Q. Your father's family has been in opposition to Atkins, have they not? (Objected to, as incompetent, immaterial, and irrelevant. Objection sustained.)

Mary Langley was sworn as a witness for the plaintiff. Upon her examination she testified that she was fifteen years old past; that she was one of the scholars in Miss Gladwish's school; that she remembered the occasion of Atkins and Dillon coming to the school house one morning before Miss Gladwish was there; that witness came afterwards with Miss Gladwish; that Mr. Murphy and Mr. Creaney and Maggie and Sadie Otis also came with witness and Miss Gladwish. Witness then stated the conversation that occurred between the plaintiff and defendant, substantially as the same was stated by the former witness. She was cross-examined by counsel for defendant as follows:

Q. Your father lives in this school district you have been asked about?

A. Yes.

Q. You have been going to this school Miss Gladwish taught?

A. Yes.

Q. There has been a good deal of trouble and dissension in that school district, has there not? (Objected to, as incompetent, immaterial, and not affecting the credit of the witness. Sustained.)

Q. Has your father's family, including yourself, been in opposition to Atkins and taken an opposite part against Atkins? (Objected to, same as last above. Sustained.)

Q. Have you yourself been in opposition to Atkins, and do you now entertain a friendly feeling towards Atkins?

A. No, sir.

Q. You did not; you mean you are on bad terms?

A. We are not on very good.

It is true that it has been laid down as a correct rule of law, and to which I concede that the relation of a witness to either party to the cause in which he testifies, whether of peculiar friendship or hostility, is a fact material to the issue and may be shown either by the testimony of the witness himself, or by other evidence. But this is as far as I think any court has gone ; and I know of no distinction between witnesses who, from their tender age and sex, would be likely to be under the influence of parents or others than those not likely so to be. The defendant had the benefit of this rule in being permitted to show that these witnesses were not friendly to him. I do not think that there was error in the refusal of the court to allow these witnesses to be asked as to the extent of the quarreling and dissension existing in the school district, nor do I think that any answer which they could have given to the questions ruled out would have taken from or added to the weight of their evidence.

It appears from a special bill of exceptions in the case, that while addressing the jury in his closing argument the counsel for the plaintiff used the following language : " No wonder that those witnesses entertained feelings of hostility against defendant, the old bald-headed fiend, knowing as they did what he had done, and that one jury had found him guilty of the charge." To the use of such language defendant's attorney objected and asked the court to restrain the attorney ; thereupon the court said to the attorney that such talk was improper, and told the jury not to consider it. Thereupon the attorney desisted. This is assigned for error.

If upon the attention of the court being called to the above language of counsel in summing up to the jury it had refused to stop him and express its disapprobation of the language to the jury, such refusal would probably have been reversible error. But the court, having, on the con-

trary, stopped and reprimanded the counsel, did all that good practice required of it, and I do not think the misconduct of the attorney in the use of the language quoted was of that flagrant character which under the statute would vitiate a verdict *per se.*

Defendant claims that the damages awarded by the jury are excessive. From a careful consideration of the evidence, while I can easily conceive that a jury might have found the issue for the defendant, I cannot easily conceive how, finding for the plaintiff at all, their verdict could have been for a less sum.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.