JULIUS FREIBERG ET AL. V. JULIUS TREITSCHKE ET AL.

FILED MAY 3, 1893.   No. 4630.

Promissory Note: ACTION TO RECOVER: CONSIDERATION: COMPOSITION AGREEMENT: EVIDENCE: INSTRUCTIONS. The main issue in this case being whether the note sued upon was given by the defendant as payment for the other fifty per cent due from defendant to plaintiffs (fifty per cent having already been paid upon a general composition agreement of Treitschke with his creditors), or whether said note was given plaintiffs for services by plaintiffs' agent rendered for defendant, independently of such agency; it was proper to instruct the jury: 1. That if plaintiffs with Treitschke entered into such a composition agreement, a note taken for the fifty per cent by said composition rebated would be a fraud upon the rights of the other compounding creditors, and that payment thereof would not theref re be enforced.   2. Instructions as to the rights of plaintiffs, upon plaintiffs' theory of the transaction, properly required upon the evidence adduced that the jury should "believe from the testimony that such transaction was made in good faith, and not as a device to evade the effect of a payment to the plaintiffs directly."

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Charles Ogden,* for plaintiffs in error.

*Howard B. Smith* and *Clinton N. Powell, contra.*

RYAN, C.

On the 5th day of January, 1889, the plaintiffs in error filed in the district court of Douglas county a petition for the recovery of the amount, with interest and protest fees thereon, of the following promissory note:

"$1,162.80.     OMAHA, NEBRASKA, March 11, 1884.

Four months after date I promise to pay to the order of Mess. Freiberg & Workum eleven hundred sixty-two $\frac{80}{100}$ dollars, at the United States National Bank; value received.     JULIUS TREITSCHKE."

This note was indorsed in blank by August Doll.

The defendants admit the making and indorsement of the note, but claim that the same was given under an agreement for a settlement with the defendant Treitschke with all his creditors upon the basis of a certain percentage, which is hereafter detailed in the testimony; that under such agreement the plaintiffs had bound themselves ostensibly, to accept fifty per cent of the amount of their claim, and that the agent of the plaintiffs, with full authority to act in the premises, and for the purpose of securing the claim of the plaintiffs in full, agreed, without the knowledge of the other creditors of Treitschke, to procure a settlement and release from all of his creditors of their claims against him upon the basis of a certain percentage of their claims; but that in considertion thereof the plaintiffs should be paid in full of their claim; and that the plaintiffs were paid fifty per cent of their claim in cash, and that the note in suit was given for the remaining fifty per cent in pursuance of a secret agreement made between the agent of plaintiffs and the defendant Treitschke, and for no other consideration.

The plaintiffs denied that Mr. Brecher, the alleged agent, had any authority from them to enter into negotiations

with the defendant Treitschke towards compromising their claim, except as contained in their written agreement to compromise, which was introduced in evidence, and is hereinafter referred to. They also denied that they knew of any arrangement being entered into between the said Brecher and the defendant Treitschke for the purpose of compounding with his creditors, except as shown by the agreement for compromise, and they averred that whatever Brecher did beyond that was without the knowledge, authority, or consent of plaintiffs. They also denied that they had ever received any amount of money from Treitschke upon their claim, and averred that no part of the one-half of their claim, provided for by the compromise agreement, had ever been paid to them.

The evidence was mainly directed to the terms of the arrangements entered into at the date of the above copied note. The testimony of Treitschke was, that Arnold Brecher, the agent of plaintiffs, sold him the goods from which arose his indebtedness to plaintiffs, to the amount of $2,325.62; that afterwards, to-wit, in December, 1883, the witness became financially embarrassed, his creditors commencing attachment suits against him at that time; that among these attaching creditors were the plaintiffs; that in December, 1883, Arnold Brecher came to Omaha with reference to the attachment suit of plaintiffs against the witness then pending and had a conversation with the defendant Treitschke with reference to compounding with Treitschke's creditors; this conversation, Treitschke testifies, was to the effect that Brecher thought he could get all the creditors who had made attachments on the stock of goods to settle at fifty cents on the dollar, and that he could make settlement with those who had no attachments at twenty-five cents on the dollar. With reference to the claim of plaintiffs, as testified to by Treitschke, it was agreed that Treitschke should pay their claim in full if Brecher brought about settlements with the other creditors of Treitschke on

the terms above talked off, and that this part of the agree-
ment was made a secret, that no one was to know that
plaintiffs got their full amount, while the other ones got
but a half and a fourth. ' Brecher was advanced $200 for
the expenses of the trip which he was to make for the
above purpose, and for his hotel bills, etc.    The amount
owing by Treitschke at that time was between nine and
ten thousand dollars.

On the other hand, Arnold Brecher testified as to the
above conversation, that Treitschke told him that it was a
pity to see all these goods go; he would be ruined, and
have nothing any more; that his wife would not consent
that the creditors should get the money from these attach-
ment suits; that he would fight them, and it would take
a year or so to determine whether they would be entitled
to the money or the attaching creditors should, and he
asked witness whether something could not be done whereby
he could make a settlement with the creditors.    Witness
Brecher testified that he answered that he thought some-
thing might be done; that he would think it over and let
him (Treitschke) know in the afternoon. The conversation
which accordingly took place that afternoon was detailed
by Mr. Brecher in the following language (to witness
Brecher):

Q. You went up there in the afternoon; what did you
then say to Treitschke?

A. I told him (Treitschke) I thought I would be able
to secure him a settlement with his creditors on the basis
of fifty cents on the dollar with those which were secured
by the attachments, and about forty with those that did not
have security that were simply suing without an attachment;
that I had to go and see these parties personally in order
to get a settlement with them; for that purpose he em-
ployed me to do so.

Q. What did you tell him would be your compensation,
if anything, for the work you were to do?

A. I asked him to pay me one-half of the claim of Frei-berg & Workum.

Q. What did you say in regard to your claim of Frei-berg & Workum—in regard to the claim?

A. I told him at the time we had the conversation that he knew that I had guaranteed his account, and that I would be loser in that proportion. If he wanted me to get him a settlement I would undertake to get it, provided he paid me for my services fifty per cent of their claim, because they would agree to take fifty per cent of the other cred-itors.

Q. What did he say to that?

A. He accepted it very cheerfully.

Q. What else did he pay you?

A. He was to pay my traveling expenses, and he did pay me $200.

The above was the only evidence which presented direct contradictions. There was no dispute that at the time there was prepared, in writing, a form of composition agreement to be entered into by the creditors of Treitschke, which agreement was afterwards signed by the greater part of his creditors, both in number and amount. This agree-ment, omitting the preamble, was as follows:

"In consideration of the premises, and for the purpose of saving litigation and expense, said Julius Treitschke proposes and hereby agrees to and with all his said credit-ors to pay his said creditors and compromise their attach-ments and claims, as follows, to-wit: to such creditors as are secured by attachment or otherwise, fifty cents for and upon the dollar of their respective claims; to such credit-ors as are unsecured, forty cents upon the dollar of their respective claims; said amounts to be paid in two install-ments, for which the said Treitschke is to give good bank-able notes, to-wit, one-half in sixty days, and one-half in four months with approved security; provided, however, that upon the execution and delivery to each creditor ac-

cording thereto by said Treitschke of the notes hereinbe-
fore referred to for the amount to be paid said creditor
under this agreement, if said note shall be accepted as good
and bankable, then said creditors shall in writing release
and discharge said Treitschke from any and all attach-
ments or claims of every nature, except said note. We,
the undersigned creditors of said Julius Treitschke, hereby
accept the above proposition and agree to settle and com-
promise our respective claims on the terms and in the man-
ner herein set forth."

It does not clearly appear why the percentage was fixed
at forty as to the creditors who had not attached instead of
twenty-five per cent as testified to by Treitschke, but that
figure was acquiesced in by him without demur, so far as
the evidence shows. On March 11, 1884, the composition
agreement having been secured by Brecher to the satisfac-
tion of Treitschke, the note in suit was by Treitschke
made, and by August Doll indorsed for an amount equal
to one-half of the claim of plaintiffs against the defendant
Treitschke; the other one-half was remitted by draft to
plaintiffs. One of the plaintiffs testified that this note and
remittance were forwarded by Brecher in discharge of his
liability as guarantor, a liability to which Brecher referred
in his testimony, as will be seen by the quotation above
made.

Upon the issues made up, and in the light of the above
evidence, for none other of special importance was given,
the court instructed the jury as follows:

"That the issue for you to pass upon in this case is, did
the plaintiffs agree with the defendant Treitschke and with
his other creditors that they, the plaintiffs, would with
the other creditors accept one-half of the amount of their
claims in full, and would, upon the receipt of such propor-
tion of their claims, release Treitschke from his obligation
thereon, and at the same time have a secret agreement with
Treitschke that they, the plaintiffs, should be repaid in

full? If you find that such arrangements were made be-
tween the plaintiffs and Treitschke, that the plaintiffs re-
ceived from Treitschke the one-half of their claim, and
that the note in suit was given by the defendant for the
other one-half at the time said compromise was made, then
and in that case your verdict should be for the defendants,
for the law will not permit a recovery to be had upon an
obligation given under such circumstances.

"Second—If, however, you find from the testimony that
the plaintiffs did not make, or authorize to be made, in their
name or on their behalf any agreement by which they
were to receive anything more than the proportion pro-
vided for by the compromise agreement, and that they have
received nothing upon their claims but the note in suit,
and that said note was given by the defendants and ac-
cepted by the plaintiffs in compliance with the agreement
for compromise, then the plaintiffs are entitled to your
verdict for the amount due on the note.

"Third—The plaintiffs are bound by the acts of their
agent Brecher only so far as such acts were within the
general scope of his authority as such agent, or were after-
wards ratified and adopted by the plaintiffs. If, therefore,
the plaintiffs, after hearing what had been done by Brecher
in regard to the settlement of their claim against Treitschke,
accepted the benefits of such settlement without objec-
tion; if you find that they did afterwards learn of the
action of Brecher, and that with such knowledge they ac-
cepted the benefits of such action, they thereby adopted
and ratified the action of Brecher, and are bound thereby,
even though he, Brecher, was not authorized at the time by
the plaintiffs to do all he did at the time the compromise
agreement was made.

"Fourth—If you believe from the testimony that the
defendant Treitschke agreed with Brecher to pay him, as
his individual compensation for his services in procuring
the signatures of Treitschke's creditors to the agreement,

an amount equal to one-half of the claim which plaintiffs held against him, such agreement would be valid and binding between Treitschke and Brecher, and if as a result of such agreement you shall find that Treitschke paid to Brecher the amount stipulated for, such payment cannot be charged against plaintiffs as a payment on their claim against Treitschke; provided you believe from the testimony that such transaction was made in good faith and not as a device to evade payment to the plaintiffs directly.

"Fifth—If, however, you find from the testimony that the purpose of such agreement between Treitschke and Brecher (if you find such agreement was made) was a device resorted to for the purpose of securing to plaintiffs payment in full of their claim and that the plaintiffs received whatever money was paid under such agreement and credited the same upon the claim against Treitschke, then you will be justified in finding that such payment was made by Treitschke to the plaintiffs in satisfaction of one-half of their claim against Treitschke, and in that case the plaintiffs would not be entitled to recover on the note in suit, and your verdict should be for the defendants."

The fourth instruction above quoted is criticised because of the following language with which it closes : "provided you believe from the testimony that such transaction was made in good faith and not as a device to evade the effect of a payment to the plaintiffs directly." In instruction five above quoted the statement of the effect of finding that the agreement between Treitschke and Brecher was a device resorted to for the purpose of securing plaintiffs, etc., is also strenuously objected to by plaintiffs in error for the reason, as alleged, that there was no proof to justify such language. The plaintiffs' contention in the district court was, that the note sued upon was taken by Brecher for services to be rendered by him for the benefit of Treitschke; that plaintiffs were unaware of this agreement; that this note was given directly to plaintiffs and not to Brecher;

that by this note, with the draft forwarded plaintiffs by Brecher at the date of the note, the full amount of plaintiffs' claim against Treitschke was realized, and that this note was taken by Brecher and forwarded to plaintiffs in satisfaction of Brecher's guaranty of the debt of Treitschke to plaintiffs. Mr. Brecher himself testified that plaintiffs requested him to go to Omaha and watch their interest as against Treitschke after the attachment suits had been instituted against him for the collection of the same, and that he thereupon went to Omaha for the purpose indicated. It was while there as agent of the plaintiffs to look after this very claim that the agreement was made between Brecher and Treitschke as to securing a compromise between Treitschke and his creditors. According to Brecher's version of the matter he acted for the plaintiffs with reference to their claims as against Treitschke, settling for fifty per cent of plaintiffs' claim; at the same time he released plaintiffs' right to the other fifty per cent, which he took himself in consideration of his services in procuring his principals and other creditors to approve of the general rebate of fifty per cent.

In view of this unfortunate combination of circumstances neither Brecher nor his principals—the plaintiffs in this suit—have just cause to complain that the court's instructions to the jury contained the language above complained of, for upon the above circumstances and the other evidence in the case the jury could not be justly criticised if they found as a fact that plaintiffs' claim was paid in full, and that the attempt to account for established facts upon a different theory was a mere device; and without doubt such fact was clearly within the scope of the issues to be tried. There were other instructions given at the request of the defendants, of which complaint is made, but as the ground of criticism is covered by the foregoing considerations, such instructions and objections will not be considered in detail.

It will be necessary upon this branch of the case to say no more than that the law, as applicable to the issues made and evidence given, was correctly and very aptly stated to the jury in the instructions above quoted.

Plaintiffs, however, claim that the instruction which led the jury to discredit Mr. Brecher was erroneous and without foundation. It was as follows:

"Seventh—You are instructed that if you believe any witness has willfully sworn falsely to a fact, in respect of which he cannot be presumed liable to mistake, you may give no credit to any alleged fact depending upon his statement alone."

In view of what has already been said it can hardly be claimed that the court in this instruction had no reference to such facts as might fairly be deduced from the evidence; whether they were properly deducible was for the jury to say. It is barely possible that the criticism that the jury should have been told that the facts as to which the witness falsely testified must have been a material fact to justify the rejection of his evidence was a just criticism, if this was an original question. But it is not, for in *Dell v. Oppenheimer*, 9 Neb., 454, the syllabus states the rule thus: "Where a party swears falsely to a fact in respect of which he cannot be presumed likely to mistake, courts are bound to apply the maxim *falsus in uno, falsus in omnibus*, and to give no credit to any fact depending upon his testimony alone." The instruction complained of very closely follows this language; it embraces the same principle, leaving the rejection of the evidence optional rather than imperatively requiring it, as in the case cited. The rule stated in *Dell v. Oppenheimer, supra*, was referred to with approval in *Young v. Pritchett*, 10 Neb., on page 357. In *Atkins v. Gladwish*, 27 Neb., 847, the qualifying word, "material," was used, though the question considered did not arise upon the use of that word, but as to whether or not the words "unless corroborated" were indispensable. In *Walker v. Haggerty*,

30 Neb., 120, the word "material" had been used, and the contention there was, whether there was any evidence which could be deemed material; not whether the word was indispensable. In the case at bar, the evidence of Brecher was, without question, material. Indeed, without it plaintiffs' theory as to Brecher's having earned the note sued upon would have been entirely without support. Under these circumstances we cannot say that the district court erred in giving the instruction omitting the word "material." This disposes of all the questions raised, and it results that the judgment of the district court is

AFFIRMED.

THE other commissioners concur.