NORA JOHNSON, APPELLEE, V. GARRETT JOHNSON, APPELLANT.

FILED MARCH 5, 1908.   No. 15,093.

1. Action for Personal Injuries: INSTRUCTIONS. "In an action for personal injuries it is error to give an instruction allowing the jury to assess damages for permanent injuries or lasting impairment of health, unless there is evidence showing, with reasonable certainty, that such permanent injuries or lasting impairment of health were in fact sustained by the plaintiff." *Goken v. Dallugge*, 72 Neb. 23.

2. Evidence. The maxim, *falsus in uno, falsus in omnibus*, does not

permit the jury to totally disregard the corroborated evidence of an impeached witness, but upon consideration thereof the jury may judge of its credibility and give thereto such weight as it is entitled to.

3. **Trial:** INSTRUCTIONS. The jury were instructed, in substance: If you believe that a certain witness (named in the instruction) is a person of bad reputation for truth and veracity in the neighborhood where he resides, then, as a matter of law, that fact tends to discredit his testimony, and as jurors you may entirely disregard it, except so far as he is corroborated by other credible testimony, or by facts and circumstances proved on the trial. *Held,* Proper.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*John M. Stewart* and *D. H. McClenahan,* for appellant.

*Berge, Morning & Ledwith, contra.*

EPPERSON, C.

Omitting the title, signature, and verification, we copy in full the petition filed in the district court, as follows: "For cause of action against the defendant, plaintiff says that on the 8th day of August, 1905, between the hours of 1 o'clock and 4 o'clock P. M., at her home near Panama, Lancaster county, Nebraska, the defendant Garrett Johnson, unlawfully, wilfully, and maliciously assaulted and beat plaintiff, with intent then and there to have unlawful intercourse with her against her will, and did bruise, wound and injure her, thereby causing her to become and remain sick and in bad health from thence hitherto, and to suffer great pain of mind and body, and as a result of said assault the plaintiff's health has been permanently impaired and injured, all to plaintiff's damage in the sum of ten thousand ($10,000) dollars. Wherefore plaintiff prays judgment against defendant in the sum of ten thousand ($10,000) dollars and costs of suit." The answer was a general denial. Upon the trial the plaintiff obtained a verdict and judgment for $2,000. Defendant appeals.

Instruction No. 5 given to the jury is as follows: "If, therefore, under this rule, you find and believe that the defendant, Garrett Johnson, on the 8th day of August, 1905, at the time and place by the plaintiff alleged, did unlawfully, wilfully, and maliciously assault the plaintiff, with intent then and there to have unlawful intercourse with her against her will, and did bruise, wound and injure her, causing her to become and remain sick and in bad health, and to suffer pain of mind and body, thereby causing the plaintiff's health to be permanently impaired and injured, then and in that event the plaintiff would be entitled to a verdict at your hands; and such verdict should be arrived at under the rule that the court gives you herein." Indorsed: "Given. E. P. H., Judge. Excepted to by defendant." This is objected to because it permits the jury to consider and recompense plaintiff for permanent injuries, when there is no evidence showing such damages. We have examined the evidence, and are convinced that all reference to a permanent injury should have been omitted from the instruction. In the absence of error, courts are reluctant to disturb a verdict for injuries inflicted by an assault, unless it appears that the jury were swayed by prejudice or passion, or were guided by an improper rule as to the measure of recovery.

There is no evidence in the case at bar from which the jury could reasonably have inferred that the injury was of a permanent character. Defendant owns and operates a meat market in the village of Panama. Plaintiff's husband is the defendant's brother, and was in his employ at the time of the alleged assault. Plaintiff testified that on August 8, 1905, while her husband was absent, defendant came to her home, about 80 rods from the village of Panama, and in the presence of her three year old child committed the assault alleged. It is unnecessary to repeat the details related by the plaintiff. She testified that by this assault she received bodily injuries, that her wrists and arms were black and blue; that her back was bruised, and since then she has been weak and nervous,

and not a bit well. She speaks of restless nights, which she attributes to the memory of the defendant's assault upon her; that at the time of the trial her health had improved, but she still suffered with her back and with nervousness. Two months prior to the trial in the lower court she and her husband moved to Panama and engaged in the hotel business. Since then she had a girl to assist her in the work. Prior to that time she did all her housework and the family washing and ironing, which had to be done; her husband helping her about the housework when she was unable to attend to it. Plaintiff's husband corroborated plaintiff as to the condition of her wrists and back, and testified that for two days after the assault she was confined to her bed, unable to walk, and was nervous; that he procured medicine for her from a local physician, whom he told that plaintiff had nervous headaches and nervous spells, and her back hurt her. He further testified that at the time of the trial, 15 months later, her health was better, but she was not as well as she was before the assault; that her trouble seemed to be in her back. Plaintiff and her husband were the only witnesses who testified regarding the injuries. It does not appear that a physician was called to see her, or that she ever consulted a physician relative to the matter. It is significant that after the assault, and during the two days she was helpless, none of her neighbors or friends visited her, or, if they did, it is remarkable that they were not called to testify as to her condition. On the day following the assault her husband, according to his own testimony, called on defendant and talked or quarreled with him over the assault; and in the same forenoon he told his father about it at the latter's place of business. Moreover, at noon on the same day, while his wife was at home, confined to her bed, unable to walk, the husband took dinner with his father, who lived in the village, and at least a quarter of a mile from plaintiff's home. Plaintiff herself testified that previous to the assault she had had "some pretty bad health." This may readily be believed,

when we take into consideration the following facts shown by the evidence: At the time of the trial, November 2, 1906, plaintiff was about 25 years of age, and had been married about 6 years. Her only living child was born in July, 1902. Some time prior thereto she had had a miscarriage, and about November 1, 1904, another. And when we take into consideration the fact that after the alleged assault, and in June, 1906, she had a miscarriage of a seven-months' child, we can readily see that there are potent reasons for believing that the nervousness and back trouble of which she and her husband testified might have been caused by reasons other than defendant's assault.

Evidence of bodily injury in this case is far from satisfactory, and the evidence of a permanent injury does not exist. The fear, humiliation, and mental anguish, experienced by a woman when assaulted by one with intent to hold sexual intercourse with her, is a damage for which she may recover; but, unless the evidence shows that abnormal conditions of a lasting character will probably result, no occasion arises by reason thereof to submit the question of permanent injury to the jury. The unhappy remembrance of such event alone does not amount to a permanent injury. It does not appear that any damages are reasonably certain to result from the alleged assault, except such as had accrued at the time of the trial. The judgments of the lower courts of this state have been repeatedly reversed because the question of recovery for permanent injuries was submitted to the jury when the evidence was insufficient to warrant a consideration thereof. A review of all the decisions is unnecessary. A case directly in point is *Goken v. Dallugge*, 72 Neb. 23, wherein it was held: "In an action for personal injuries it is error to give an instruction allowing the jury to assess damages for permanent injuries or lasting impairment of health, unless there is evidence showing, with reasonable certainty, that such permanent injuries or lasting impairment of health were in fact sustained by the plaintiff."

As this case must be remanded for another trial, there is one other question which should be considered now. Instruction No. 8 is in part as follows: "If you believe any witness has wilfully testified falsely to any material fact in this case in respect to which such witness could not be presumed liable to mistake, you may give no credit to any alleged fact depending upon the statement alone of any such witness. And you are further instructed that, if you believe from the evidence that the witness Charles Johnson is a person of bad reputation for truth and veracity in the neighborhood where he resides, then, as a matter of law, that fact tends to discredit his testimony, and as jurors you may entirely disregard it, except so far as he is corroborated by other credible testimony, or by facts and circumstances proved on the trial." The exception in reference to corroborative evidence and circumstances is objected to. It is argued that the rule given invades the province of the jury, by not allowing them to wholly disregard the testimony of an impeached witness, and forbids the jury from discrediting the testimony of the witness if corroborated. We do not so understand the instruction. It does not purport to tell the jury that they cannot judge of the credibility of the corroborated testimony of an impeached witness. It does not take from the jury their duty to weigh all the testimony and to give to it such credit as it is entitled to. The rule denies to the jury the privilege of totally disregarding the corroborated testimony of an impeached witness; that is, they have no right to overlook the fact that he testified relative to facts supported by the testimony of credible witnesses or corroborated by circumstances. But the duty still remains for the jury to determine the weight they shall give to his corroborated testimony. They may disbelieve him, but they must not totally disregard his testimony. They must consider it to the extent of determining what weight it is entitled to. The rule followed by the trial court has been followed generally by the district courts of this state, and

8

approved by this court in the following cases: *Dell v. Oppenheimer,* 9 Neb. 454; *Walker v. Haggerty,* 30 Neb. 120; *Watson v. Roode,* 30 Neb. 264; *Freiberg v. Treitschke,* 36 Neb. 880; *Denney v. Stout,* 59 Neb. 731. However, in *Atkins v. Gladwish,* 27 Neb. 841, an instruction omitting the qualification "unless corroborated" was approved. We do not understand that that case is contrary to the conclusion we have reached. "The reason of the case," the learned justice said, did not' require the charge to be qualified by the additional words "unless corroborated." Indeed, were there no corroborative evidence or circumstances in the case, the omission of the qualifying clause would of course be unnecessary, if not prohibited. See, also, *Titterington v. State,* 75 Neb. 153; *Barber v. State,* 75 Neb. 543. There is a conflict in the decisions of this question among the courts of other states, a review of which is unnecessary. We see no reason for modifying the rule so frequently announced and so generally followed in this state.

As there must be a new trial of this case, it is unnecessary to review the defendant's remaining contentions that the evidence is insufficient to support the verdict, and that the same was the result of prejudice and passion.

We recommend that the judgment be reversed and the cause remanded for a new trial.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded to the district court for a new trial.

REVERSED.