WESTERN REAL ESTATE TRUSTEES et al. v. HUGHES.†

(Circuit Court of Appeals, Eighth Circuit. August 18, 1909.)

No. 2,814.

1. NEGLIGENCE (§ 122*)—CONTRIBUTORY NEGLIGENCE—PLEADING AND PROOF IN FEDERAL COURTS.

In the federal courts, in actions grounded upon negligence, the plaintiff is entitled to rest upon the presumption that he was without fault or negligence until the contrary is in some way made to appear; and the burden of alleging and proving the contrary rests upon the defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 221; Dec. Dig. § 122.*]

2. PLEADING (§ 34*)—CONSTRUCTION—IMPLICATION.

What is plainly implied in a pleading is as much a part of it as what is expressed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69; Dec. Dig. § 34.*]

3. PLEADING (§ 404*)—WAIVER OF DEFECTS.

Where a pleading contains an allegation which is not a nullity, but is subject to criticism as being indefinite and largely a conclusion of law, and the opposite party, without questioning its sufficiency in a timely way, takes issue thereon and proceeds to trial, the defect is waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1349; Dec. Dig. § 404.*]

4. MASTER AND SERVANT (§ 305*)—TORTS OF SERVANT—RESPONSIBILITY OF MASTER.

A master is responsible for the tortious acts of his servants, done in his business and within the scope of their employment, although he did not authorize or know of the particular act, or even if he disapproved or forbade it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1223, 1224; Dec. Dig. § 305.*]

5. MASTER AND SERVANT (§ 305*)—SCOPE OF EMPLOYMENT.

Servants do not depart from the scope of their employment merely because in executing the work assigned to them they exceed or violate their instructions in respect of its details or the manner of doing it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1223; Dec. Dig. § 305.*]

6. DAMAGES (§ 62*)—DUTY OF INJURED PARTY TO AVOID OR LESSEN—EFFECT OF FAILURE.

While one whose property is endangered through the negligence of another is required to exercise reasonable care to avoid or lessen the threatened injury, the consequence which the law attaches to a negligent failure so to lessen the injury is not the loss of all right of recovery, but the elimination from the recovery of such damages as could have been avoided by the exercise of reasonable care.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 119; Dec. Dig. § 62.*]

(Syllabus by the Court.)

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 15, 1909.

In Error to the Circuit Court of the United States for the District of Nebraska.

See, also, 153 Fed. 560, 82 C. C. A. 514.

William Baird (Edgar A. Baird and Claire J. Baird, on the brief), for plaintiffs in error.

Irving F. Baxter (Richard S. Hall and John F. Stout, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge. This case arose out of the falling of a party wall in Omaha, whereby the buildings of which it was a part were carried down and much damage was done to the stock of groceries and store fixtures of the plaintiff below, who was occupying one of the buildings under a lease from Andrew J. Hanscom, its owner. The other building was owned by the defendants below. The party wall consisted of a stone foundation, or cellar wall, seven feet high and a brick superstructure extending upward four stories. The plaintiff sought to recover from the defendants the amount of his loss, and in his petition alleged that "the defendants, through their agents and employés, were engaged in making certain extensive alterations in their said building, among other things in particular, in lowering the main floor; * * * that * * * the work of making said alterations * * * was being done * * * in a grossly negligent and careless manner, in that the defendants, by their agents and servants, did cut away and remove large portions of the stone foundation * * * without properly and adequately supporting the superstructure, * * * and did thereby so weaken said stone foundation and undermine and weaken the said brick superstructure as to cause the collapse of" the latter; that "said alterations and everything done in connection therewith were made and was done in a negligent manner," and that "the collapse of the said party wall, so as aforesaid caused and brought about by and through the negligence of the defendants and of their agents and employés, caused the collapse and fall of the * * * building * * * occupied by plaintiff." In their answer the defendants denied the negligence so charged against them, and alleged that the plaintiff negligently had contributed to the falling of the party wall (a) by permitting waste water from a large refrigerator in the building occupied by him to overflow against and into the party wall, whereby its stone foundation was weakened; (b) by storing in such building, near the party wall and above the part of the foundation which was so weakened, a large amount of merchandise, the weight of which was excessive considering the condition of the foundation; and (c) by failing to remove such merchandise or any part thereof on the evening preceding the falling of the party wall, after discovering the weakened condition of the foundation. In his reply the plaintiff denied the negligence so charged against him, and a trial of the issues resulted in a verdict and judgment in his favor, which the defendants now seek to avoid. A prior trial had resulted in a like verdict and judgment; but the judgment was reversed (82 C. C. A.

514, 153 Fed. 560) because of an erroneous ruling on a question which was resolved favorably to the defendants at the second trial.

To a proper appreciation of the questions now presented for decision, it is necessary that the case made by the evidence be stated briefly. In the construction of the party wall the sides of its stone foundation were carried up separately, the center was filled in with small stone and mortar, and the whole was bonded at the top by wider stone. The upper or brick portion was narrower than the foundation, leaving a wide shoulder on the defendants' side and a lesser shoulder on the other. Originally the joists of the main floor in the defendants' building were rested at one end upon the wide shoulder; but later the floor was raised and the shoulder was carried up correspondingly, so that the joists still could be rested thereon. On the occasion in question the defendants, through servants employed for the purpose, were engaged in lowering the floor, and at some time in the course of the work a part of the foundation of the party wall split or separated in the direction of its length, the defendants' side bulged out perceptibly, and bricks in considerable numbers fell from the base of the upper wall. Thereupon those to whom the work of lowering the floor had been committed removed a part of the defendants' side of the foundation, and placed a jack screw and header under that part of the upper wall from which the bricks had fallen, and also placed a like support under the main floor on the plaintiff's side; their immediate purpose being to prevent more bricks from falling and to take some of the weight off the foundation. Things were left in that condition overnight, and the next morning, after the defendants' servants resumed work, the party wall fell and carried down the two buildings.

At what time the foundation began to split and to bulge, what caused it to do so, and whether reasonably appropriate and adequate precautions were taken to support the upper wall, are matters in respect of which the evidence was conflicting. That for the plaintiff tended substantially to show that when the floor was lowered, so that the joists touched the original shoulder, the defendants' servants declared that the floor would have to come down about four inches more, and proceeded to, and did, pry off a substantial part of the shoulder, including several of the bond stones, which extended well under the upper wall; that this materially weakened the foundation, and undermined and weakened the upper wall, and shortly thereafter the foundation began to split and to bulge at that place, and bricks in considerable numbers began to fall from the upper wall; that the precautions then taken to support the wall were not reasonably appropriate or adequate; that other designated precautions usually were taken in like circumstances, and should have been taken in this instance; and that the overflow of waste water from the plaintiff's refrigerator had not been such as to weaken the foundation. But the defendants' evidence was otherwise, and tended especially to show that there was no intention or attempt to lower the floor beyond its original position; that the splitting and bulging of the foundation and the falling of the bricks occurred while the floor was being lowered so that the joists would rest upon the original shoulder; that no part of the foundation was pried out or removed until after it had split and bulged and bricks

from the upper wall had fallen in considerable numbers; that no more of the foundation was then removed than was requisite in placing a necessary support under the upper wall; and that the defendants' servants exercised reasonable care in all that was done by them. There was no evidence that the weight of the plaintiff's merchandise was excessive, considering the conditions prior to the splitting and bulging of the foundation and the falling of the bricks, and, while it was shown that after the wall was thus weakened the plaintiff made no effort to remove the merchandise or any part of it, there was no conclusive showing that in the particular circumstances he was negligent in that regard.

The defendants objected to the admission of the testimony that their servants pried out a part of the stone foundation, including several of the bond stones, so that the floor could be lowered beyond its original position; the grounds of the objection being, first, that the petition did not allege that the plaintiff was without fault or negligence in the premises, and, second, that it did not allege that the defendants' servants were then acting within the scope of their employment. The objection was overruled, and properly so. By the uniform course of decision in the federal courts the plaintiff was entitled to rest upon the presumption that he was without fault or negligence until the contrary in some way was made to appear, and the burden of alleging and proving the contrary rested upon the defendants. Texas & Pacific Ry. Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78; Chicago G. W. Ry. Co. v. Price, 38 C. C. A. 239, 246, 97 Fed. 423, 430. And while it was incumbent upon the plaintiff to show that the defendants' servants were acting within the scope of their employment, in so far as his right of recovery was rested upon their acts, it does not admit of doubt that in his petition he met this requirement sufficiently to render the testimony in question admissible. As has been seen, he there alleged, not only that "the defendants, through their agents and employés," were engaged in "lowering the main floor," but also that the work was being done in a grossly negligent and careless manner, in that "the defendants, by their agents and servants, did cut away and remove" a substantial part of the stone foundation, etc. In this there was a plain implication that the agents and servants were acting within the scope of their employment, because, if they were not, it was not true that the defendants, by them, did the acts described. What is plainly implied in a pleading is as much a part of it as what is expressed. United States v. Babbit, 1 Black, 55, 61, 17 L. Ed. 94; Cornett v. Williams, 20 Wall. 226, 250, 22 L. Ed. 254; Brewster v. Lanyon Zinc Co., 72 C. C. A. 213, 224, 140 Fed. 801, 812.

The defendants also objected to the admission of the testimony that the precautions taken to support the wall were not reasonably appropriate and adequate, and that other designated precautions usually were taken in like circumstances and should have been taken in this instance; the ground of the objection being that the petition did not tender any issue of fact to which such testimony was applicable. But the petition did allege that a substantial part of the foundation negligently and carelessly was cut away and removed "without properly

and adequately supporting" the upper wall, and that this caused the wall to fall; and the defendants, without questioning the sufficiency of the allegation in point of substance or form, took issue thereon and went to trial. Doubtless it was subject to criticism as being indefinite and largely a conclusion of law; but it was not a nullity, and the defendants, by failing to take advantage of the defect in a timely way, waived the right to do so. Atkins v. Gladwish, 27 Neb. 841, 847, 44 N. W. 37; Omaha, etc., Co. v. Wright, 49 Neb. 456, 68 N. W. 618; Fremont, etc., Co. v. Harlin, 50 Neb. 698, 70 N. W. 263, 36 L. R. A. 417, 61 Am. St. Rep. 578. Plainly the testimony was applicable to the issue so tendered and joined.

A motion for a directed verdict in favor of the defendants was denied, and it is now urged that this was error, because there was no substantial evidence of negligence on the part of the defendants, and because the evidence of negligence on the part of the plaintiff was conclusive. Of this it might suffice to say that the evidence as set forth in the record has been carefully read and considered, with the result that it has been found that neither branch of the contention is tenable. But in deference to the earnestness with which it is urged that the defendants' purpose was to lower the floor only to its original position, that their servants exceeded or violated their instructions if they attempted to lower it beyond that point, and that for such an act the defendants were not responsible, it may be well to add that, by the uniform course of decision in this jurisdiction, a master is responsible for the tortious acts of his servants, done in his business and within the scope of their employment, although he did not authorize or know of the particular act, or even if he disapproved or forbade it. Philadelphia & Reading R. Co. v. Derby, 14 How. 468, 486, 14 L. Ed. 502; Railroad Co. v. Hanning, 15 Wall. 649, 657, 21 L. Ed. 220; Steamboat Co. v. Brockett, 121 U. S. 637, 645, 7 Sup. Ct. 1039, 30 L. Ed. 1049; Singer Manufacturing Co. v. Rahn, 132 U. S. 518, 522, 10 Sup. Ct. 175, 33 L. Ed. 440; Bowen v. Illinois Central R. Co., 69 C. C. A. 444, 451, 136 Fed. 306, 313, 70 L. R. A. 915; Standard Oil Co. v. Parkinson, 82 C. C. A. 29, 152 Fed. 681. True, when his servants step aside from his business or depart from the scope of their employment, for however short a time, the relation of master and servant is suspended, and the resulting responsibility ceases (Chicago, etc., Co. v. Bryant, 13 C. C. A. 249, 65 Fed. 969; Bowen v. Illinois Central R. Co., supra; St. Louis, etc., Co. v. Harvey, 75 C. C. A. 536, 144 Fed. 806); but servants do not depart from the scope of their employment within the meaning of this rule merely because, in executing the work assigned to them, they exceed or violate their instructions in respect of its details or the manner of doing it (Philadelphia & Reading Railroad Co. v. Derby, supra), which is at most what was done in the present case.

The court refused to incorporate in its charge to the jury an instruction to the effect that, although the lowering of the floor was intrusted by the defendants to their servants, still, if the latter attempted to lower it beyond its original position, and in so doing exceeded or violated their instructions, the former were not responsible for any

act done in that attempt; but, as the proposed instruction was in contravention of the rules of law just stated, it was properly rejected.

The court also rejected an instruction to the effect that, if the floor in its elevated position was furnishing lateral support to the party wall, and if the lowering of the floor withdrew that support, and either caused or contributed to the falling of the wall, that alone did not make the defendants liable. In this there was no error. The plaintiff was not seeking to ground his asserted right of recovery upon any withdrawal of lateral support, and the court unequivocally told the jury that the defendants were not liable unless the work of lowering the floor was negligently done, as charged in the petition. To read the record carefully is to appreciate that the jury found that that work was negligently done as charged.

Error is assigned upon the withdrawal from the jury of the charge in the answer that the plaintiff negligently had contributed to the falling of the wall by overloading the building occupied by him; that is, by storing therein a large amount of merchandise, which was excessive in weight, considering the condition of the foundation. Upon looking at the answer it is manifest that this charge referred to the condition of the foundation prior to the defendants' operations—that is, before it began to split and to bulge; and upon looking at the evidence it also is manifest that there was no proof of such an overloading or excessive storing. The ruling, therefore, was right. Whether or not there was any substantial evidence that the plaintiff negligently contributed to the falling of the wall by failing to remove his merchandise, or some part of it, upon discovering, after the defendants' operations were well advanced, that the foundation was then in a weakened condition, was a different question, and was not affected by the ruling.

Quite apart from any negligent contribution by the plaintiff to the falling of the wall, and after correctly stating that one whose property is endangered through the negligence of another is required to exercise reasonable care to avoid or lessen the threatened injury, and can then charge the delinquent with the labor and expense properly incident thereto, the court instructed the jury that if the plaintiff by the exercise of reasonable care could have removed all or a part of his property from the building after discovering that the wall was in danger of falling, and he failed so to do, he could recover only such of the damages sustained as would not have been avoided by so doing. But the defendants insisted then, and still insist, that if the plaintiff negligently failed to lessen his damages he was without any right of recovery; that is, if he was negligent in failing to remove a part of his property from the building he could not recover at all, although he reasonably could not have avoided the injury to the remainder of his property. The law is not so unreasonable. On the contrary, as was indicated in the instruction given, the consequence which it attaches to a negligent failure to lessen damages is not the loss of all right of recovery, but the elimination from the recovery of such damages as could have been avoided by the injured party by the exercise of reasonable care. Warren v. Stoddart, 105 U. S. 224, 229, 26 L. Ed. 1117; Douglass v. Stephens, 18 Mo. 362; Kansas Pac. Ry. v. Mihlman, 17

Kan. 224, 234; 1 Sutherland on Damages (3d Ed.) § 88; 13 Cyc. 71 et seq.

The several points advanced to obtain a reversal have now been considered, and, as none has been found to be well taken, the judgment is affirmed.